1
2
3
4                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
5                                    AT TACOMA

6   DAWN LUI,

7                         Plaintiff,              Case No. 3:21-cv-5030-BHS-TLF

8         v.                                      REPORT AND
                                                  RECOMMENDATION
9   LOUIS DEJOY,
                                                  Noted for January 13, 2023
10                        Defendant.

11          This matter comes before the Court on defendant's motion for summary

12   judgment. Dkt. 22. Plaintiff's amended complaint asserts that defendant violated Title VII

13   of the Civil Rights Act of 1964, and the Age Discrimination and Employment Act

14   (ADEA), by discriminating, and retaliating -- based on race, national origin, gender, and

15   age -- against plaintiff in her employment with the United States Postal Service. Dkt. 15

16   at 2-9. Plaintiff is a 56-year-old (on September 26, 2022, when she signed her

17   declaration) female of Chinese national origin. Dkt. 27, Declaration of Dawn Lui in

18   Support of Plaintiff's Response to Motion for Summary Judgment, at 1. Plaintiff seeks

19   declaratory judgment, damages, injunctive relief, prejudgment interest, an offset for tax

20   consequences of judgment, and attorney's fees and costs. Dkt. 15, at 9-10. Having

21   considered the parties' briefing and the balance of the record, the Court recommends

22   defendant's motion for summary judgment should be granted in part, and denied in part.

23
24
25

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed.

Plaintiff has been employed by the United States Postal Service ("USPS") since 1992. Dkt. 23-1, Deposition of Dawn Lui (Exhibit A) at 3; Dkt. 27, Dawn Lui Decl., ¶ 2. Plaintiff moved into a Postmaster position in 2004. Dkt. 23-1 at 3; Dkt. 27 at ¶ 2. In 2014 plaintiff became the Postmaster for Shelton, Washington. Dkt. 23-1 at 3; Dkt. 27 at ¶ 2.

In October 2019, USPS issued a Notice of Proposed Downgrade to plaintiff. Dkt. 23-3, Notice of Proposed Adverse Action – Downgrade (10/28/2019) (Exhibit C); Dkt. 27 at ¶ 26. The Notice of Proposed Downgrade listed three charges of unacceptable conduct:

> Specification 1: On or around February 28, 2018, you engaged in Unacceptable Conduct when you inappropriately instructed Rural Carrier [redacted] to write and sign a statement indicating his acceptance of a compensation scheme that you had deemed appropriate for his working on his non-scheduled days. You advised [redacted] that if he did not write and sign the statement, you would change his relief day.

> Specification 2: On or around March 8, 2018, you engaged in Unacceptable Conduct when you behaved in a seemingly violent manner by throwing a clipboard on the ground and kicking packages and boxes that were on the workroom floor.

> Specification 3: On or around October 4, 2018, you engaged in Unacceptable Conduct when you endangered on-duty employees by inviting an employee's husband into your office and escorting him into an employees-only area of the Postal facility, even though: (i) he had reportedly been acting aggressively in the parking lot; (ii) he had reportedly accused a Shelton Post Office supervisor of having sexually harassed his employee-wife; and (iii) he reportedly appeared to be angry. At the time you escorted the employee's husband to your office, the supervisor he had accused of sexual harassment was present at work.

Dkt. 23-3 at 2.

REPORT AND RECOMMENDATION - 2

1    In December of 2019, plaintiff filed a letter appealing the downgrade proposal.

2    Dkt. 23-5 Letter (12/26/2019) (Exhibit E). In the letter, plaintiff denied any wrongdoing

3    and objected to the three charges raised against her. Dkt. 23-5 at 2-3. Plaintiff asserted

4    that the allegations regarding threatening an employee with a changed relief day and

5    acting in a violent manner were false. *Id.* Plaintiff also raised concerns regarding a

6    hostile working environment because of an alleged pattern where employees were

7    writing false statements about a former Postmaster. *Id.*

8    On February 11, 2020, Karen Bacon – the deciding official for plaintiff's proposed

9    downgrade – issued a letter of decision on the proposed downgrade. Dkt. 23-6, Letter of

10    Decision to Notice of Proposed Downgrade (2/11/2020) (Exhibit F). Bacon found that

11    Specification 1 and 2 were supported by the record, but that Specification 3 was not

12    supported, and decided to downgrade plaintiff from a Level 21 Postmaster in Shelton,

13    WA to a Level 18 Postmaster in Roy, WA. Dkt. 23-6 at 2.

14    For Specification 1, Bacon found plaintiff's explanation – that the change in the

15    employee's schedule was based on mutual consent – was unpersuasive because

16    plaintiff had made a perceived threat of retaliation against the employee. *Id.* at 2. The

17    letter also explained that Specification 1 was supported because – assuming the

18    decision actually was made with mutual consent -- plaintiff did not have the authority to

19    change or deny the compensation or rights granted under the applicable National

20    Agreement, even with the employee's consent. *Id.* at 2-3.

21    Regarding Specification 2 – alleging that plaintiff behaved in a seemingly violent

22    manner by throwing a clipboard and kicking packages – Bacon found that the

23    specification was supported by the record. Dkt. 23-6 at 3. Bacon explained that she

24

25

REPORT AND RECOMMENDATION - 3

1    considered plaintiff's statements, but found the report that plaintiff engaged in

2    unacceptable conduct more credible. *Id*. Finally, Bacon found the record did not support

3    Specification 3 – alleging that plaintiff acted unacceptably by bringing an employee's

4    non-employee husband to an employee-only area to discuss concerns regarding sexual

5    harassment. Dkt. 23-6, Letter of Decision to Notice of Proposed Downgrade (2/11/2020)

6    (Exhibit F).  Bacon explained that while she disagreed with plaintiff's approach to

7    handling the situation, plaintiff's conduct did not rise to the level of unacceptable

8    conduct. *Id*.

9        Bacon found mitigating factors including no past discipline, otherwise satisfactory

10   work performance, and plaintiff's 25 years of service with the Postal Service, weighed

11   against the downgrade. Dkt. 23-6 at 4. Bacon stated that the severity of plaintiff's

12   conduct as alleged in the first specification -- failing to follow the terms of the National

13   Agreement between USPS and the National Rural Letter Carriers Association – was

14   sufficient standing alone to warrant her removal. Dkt. 23-6 at 4-5. Bacon also found

15   other factors that weighed in favor of a downgrade, including violating the USPS zero-

16   tolerance work place violence policy. Dkt. 23-6 at 4-8.

17       On November 18, 2019, plaintiff filed an Equal Employment Opportunity informal

18   complaint through the USPS's Equal Employment Opportunity system. Dkt. 23-12, EEO

19   Alternative Dispute Resolution Specialist's (ADRS) Inquiry Report (Exhibit L). Plaintiff

20   asserted an "ongoing hostile work environment since 2017, and discrimination based on

21   Race, Color, Sex, National Origin, Age and Retaliation." *Id*. at 2. Plaintiff cited the Notice

22   of Proposed Downgrade, the decision to downgrade plaintiff and false allegations

23   against plaintiff as evidence of a hostile work environment. *Id*. at 2, 4. Plaintiff reported

24

25

REPORT AND RECOMMENDATION - 4

several incidents of hostile work environment from November 2017 through November 2019. *Id.* at 5, 8-9. On March 3, 2020, plaintiff filed a formal Equal Employment Opportunity complaint raising the same allegations of hostile work environment. Dkt. 23-13, EEO Complaint of Discrimination in the Postal Service (Exhibit M).

Plaintiff has filed a petition with the Merit Systems Protection Board ("MSPB") appealing the decision to downgrade plaintiff. Dkt. 23-14, MSPB Initial Decision. The MSPB issued an initial decision affirming the decision to downgrade plaintiff. Dkt. 23-14. The parties' assertions regarding whether there are genuine disputes of material fact, will be discussed as relevant to the legal analysis, below.

DISCUSSION

Summary judgment is supported if the movant "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses. . .." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324 (1986). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex,* at 323. A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Acosta v. City National Corporation,* 922 F.3d 880, 886-887 (9th Cir. 2019).

In this context, materiality means the fact is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific*

1    *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Acosta,* 922 F.3d

2    at 887 (the court asks "'whether reasonable jurors could find by a preponderance of the

3    evidence that [the moving party] is entitled to a verdict – whether there is evidence upon

4    which a jury can properly proceed to find a verdict for the party producing [the

5    evidence], upon whom the onus of proof is imposed.'" (quoting, *Anderson v. Liberty*

6    *Lobby,* 477 U.S. at 252)).

7        The non-moving party is required to show that genuine issues of material fact

8    "'can be resolved only by a finder of fact *because they may reasonably be resolved in*

9    *favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan*

10   *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at

11   250) (emphasis in original)). The non-moving party must make a showing that is

12   sufficient to establish the existence of any element for which the moving party has

13   successfully met its initial burden of showing an absence of a genuine dispute of

14   material fact. *Celotex,* 477 U.S. 317, 322-323. When the Court considers a motion for

15   summary judgment, "[t]he evidence of the non-movant is to be believed, and all

16   justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is

17   not allowed to perform the jury's function – the Court may not weigh evidence, draw

18   legitimate inferences from facts, or decide credibility. *Id.*

19       The Court may not disregard evidence solely based on its self-serving nature.

20   *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court

21   can disregard a self-serving declaration that states only conclusions and not facts that

22   would be admissible evidence." *Id.*

23

24

25

1

2          A.  <u>Surreply</u>

3              Plaintiff filed a surreply requesting that the Court strike exhibits to the Second

4      Declaration of Katie D. Fairchild and defendant's reference to Tammy Nicholson being

5      sworn in as the new Shelton Postmaster. Dkt. 40, Plaintiff's Surreply. Because the

6      challenged evidence and arguments are not new improperly introduced evidence, the

7      Court should deny plaintiff's surreply and should not strike the challenged evidence.

8              Pursuant to Local Rule 7(g), a party may file a surreply requesting the Court

9      strike materials contained in or attached to a reply brief. The surreply must be strictly

10     limited to addressing the request to strike, the Court cannot consider any other

11     extraneous arguments. LCR 7(g)(2). When new evidence is presented in a reply brief,

12     the court should not consider the new evidence without giving the non-movant the

13     opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996).

14     However, evidence is not "new" if it is submitted in direct response to proof or evidence

15     presented in an opposition to a motion. *Rayon-Terrell v. Contra Costa County*, 232 Fed.

16     Appx. 626, 629 n. 2 (9th Cir. 2007) (citing *Provenz*, 102 F.3d at 1483).

17             The three challenged exhibits are: the Letter of Decision to Notice of Proposed

18     Downgrade dated February 11, 2020 (Dkt. 38-1) (Exhibit S); a portion of the deposition

19     of Karen Bacon (Dkt. 38-2) (Exhibit T); and the Notice of Proposed Adverse Action –

20     Downgrade dated October 28, 2019 (Dkt. 38-3) (Exhibit U). The Letter of Decision to

21     Notice of Proposed Downgrade (Exhibit S) and the Notice of Proposed Adverse Action

22     – Downgrade (Exhibit U) were both included in the first Declaration of Katie D. Fairchild

23     in support of defendant's motion for summary judgment. Dkt. 23-6, Letter of Decision to

24     Notice of Proposed Downgrade (2/11/2020) (Exhibit F); Dkt. 23-3, Notice of Proposed

25

1    Adverse Action – Downgrade (10/28/2019) (Exhibit C). Defendant relied on both

2    documents in their motion for summary judgment. Dkt. 22. Accordingly, neither of these

3    documents are new evidence improperly introduced in defendant's reply brief. The

4    Court should not strike Exhibit S or U to the Second Declaration of Katie D. Fairchild.

5          Exhibit T to the Second Declaration of Katie D. Fairchild is a portion of deposition

6    of Karen Bacon. Dkt. 38-2 (Exhibit T) (07/27/2022). The portion of the deposition

7    attached as Exhibit T is testimony in which Ms. Bacon confirms that she signed the

8    Letter of Decision to Notice of Proposed Downgrade dated February 11, 2020. Dkt. 38-

9    2. Defendant relied on testimony from the deposition of Karen Bacon in their motion for

10   summary judgment. Dkt. 22, Dkt. 23-11, Deposition of Karen Bacon (Exhibit K)

11   (07/27/2020). Additionally, it is undisputed that Ms. Bacon prepared and signed the

12   Letter of Decision to Notice of Proposed Downgrade. Accordingly, Exhibit T to the

13   Second Declaration of Katie D. Fairchild is not new evidence. The Court should not

14   strike Exhibit T to the Second Declaration of Katie D. Fairchild.

15         Finally, plaintiff argues that defendant improperly introduced a new argument by

16   mentioning that Tammy Nicholson was sworn in as the new Shelton Postmaster. Dkt.

17   40. Plaintiff requests that the Court either strike this argument or accept plaintiff's

18   supplemental arguments and declarations. Dkt. 40; Dkt. 41, Second Declaration of

19   Dawn Lui; Dkt. 42, Third Declaration of Dawn Lui. Defendant's statement regarding

20   Tammy Nicholson being sworn in as the new Shelton Postmaster in the reply brief was

21   made in response to plaintiff's assertion that defendant replaced plaintiff with Robert

22   Davies. Dkt. 31, Plaintiff's Response, at 18; Dkt. 37, Defendant's Reply, at 6.

23   Accordingly, the reference to Tammy Nicholson being the new Shelton Postmaster is

24

25

1    not "new" evidence. *Rayon-Terrell*, 232 Fed. Appx. at 629 n.2. The Court should not

2    strike defendant's statement regarding Tammy Nicholson and should not consider the

3    supplemental arguments and declarations submitted by plaintiff.

4         Based on the foregoing, the Court should deny plaintiff's surreply requesting the

5    Court strike the challenged exhibits and arguments.

6         B.   Retaliation Claim

7         Section 704 of Title VII prohibits retaliation against an employee for opposing

8    "any practice made an unlawful employment practice by Title VII, or because [the

9    employee] has made a charge, testified, assisted, or participated in any manner in an

10   investigation, proceeding, or hearing under Title VII" 42 U.S.C. § 2000e-3(a). To

11   establish a retaliation claim, plaintiff must show: (1) that she "engaged in a protected

12   activity"; (2) "suffered an adverse employment action"; and (3) "that there was a causal

13   connection between the two." *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir.

14   2021) (quoting *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008)).

15        The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*,

16   411 U.S. 792 (1973) applies to retaliation claims. *T.B. ex rel. Brenneise v. San Diego

17   Unified School Dist.*, 806 F.3d 451, 472-73 (9th Cir. 2015). Plaintiff must make a

18   threshold prima facie showing of retaliation. *Emeldi v. Univ. of Ore.*, 673 F.3d 1218,

19   1224 (9th Cir. 2012). The degree of proof necessary to establish a prima facie case of

20   retaliation on summary judgment "is minimal and does not even need to rise to the level

21   of a preponderance of the evidence." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115,

22   1124 (9th Cir. 2000).

23

24

25

Once plaintiff has made this showing, the defendant "must articulate a legitimate, non-retaliatory reason for the challenged action." *Emeldi*, 673 F.3d at 1224. If defendant can show a legitimate, non-retaliatory reason for the challenged action, plaintiff bears the burden of demonstrating that the defendant's proffered reason is merely pretext. *Id.*

Plaintiff's retaliation cause of action alleges that plaintiff engaged in protected activity when she "became involved in claims of workplace harassment in October of 2018 when it became known to her that a male employee was potentially sexually harassing a female employee in the Roy, WA office." Dkt. 15 at 8. Plaintiff contends that shortly after this investigation, plaintiff was removed from the Shelton office and faced discipline, including a proposed downgrade. *Id.*

Plaintiff's opposition to defendant's motion for summary judgment argues that she engaged in two distinct instances of protected activity: 1) reporting to her direct supervisor that employees in Shelton – including a union representative and HR Manager – were discriminating against plaintiff based on race and sex; and 2) investigating allegations of sexual harassment from an employee. Dkt. 31.

As an initial matter, the Court cannot consider plaintiff's argument that she engaged in protected activity by reporting discrimination to her direct supervisor because this factual allegation was not raised in the complaint. A plaintiff cannot rely on new factual allegations or legal theories raised for the first time in opposition to a motion for summary judgment. *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (noting that allowing new factual allegations at the summary judgment stage would deprive the opposing party adequate notice of grounds relied upon as required by Fed. R. Civ. P. 8(a)(2)); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir.

2000). Accordingly, the Court should not consider plaintiff's retaliation claims based on her alleged reports to her direct supervisor raised for the first time in opposition to the pending motion for summary judgment.

Plaintiff contends that in October 2018, a female employee approached plaintiff requesting that plaintiff speak to the employee's husband. Dkt. 27, Declaration of Dawn Lui, at ¶13. Plaintiff states that she invited the employee and her husband to have a private conversation in the USPS office. *Id.* Plaintiff alleges that the husband reported that a male employee was sexually harassing the female employee. *Id.* at ¶ 14. Next, plaintiff states that after the husband left, she interviewed the female employee and later interviewed the male employee accused of sexual harassment. *Id.* After the interviews, plaintiff stated that she determined that the sexual harassment investigation did not need to go further because the female employee denied any unwelcomed advances. *Id.*

Plaintiff's opposition to motion for summary judgment argues that interviewing the employee, the employee's husband, and the person who allegedly committed harassment,  would be protected activity -- because plaintiff took the appropriate steps in investigating allegations of harassment under the United States Postal Service Manager's Guide to Understanding, Investigating and Preventing Harassment. Dkt. 28-1, Manager's Gide to Understanding Investigating, and Preventing Harassment (Publication 552) (November 2018).

Even if plaintiff's conduct of interviewing these individuals would qualify as protected activity, plaintiff has failed to present a prima facie case that there was a causal connection between the protected activity and the adverse action – plaintiff's downgrade.

1    Plaintiff argues that there is a causal connection between the alleged sexual

2    harassment investigation and the adverse action because defendant only decided to

3    issue the notice of downgrade after the sexual harassment investigation. While

4    proximity in time between protected activity and an adverse employment action may be

5    sufficient evidence of causality to establish a prima facie case of retaliation, the

6    temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S.

7    268, 273 (2001); *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003) (finding that

8    a nine-month time lapse between protected activity and the adverse action was not

9    sufficiently close in time to create an inference of causation). Plaintiff's alleged protected

10   activity occurred in October 2018 and the notice of proposed downgrade was issued in

11   October 2019. The one-year time lapse between the alleged protected activity and the

12   alleged adverse action is insufficient alone to establish a prima facie case of retaliation.

13   Additionally, while plaintiff's behavior during the interview of the employee's

14   husband was listed as a charge of unacceptable behavior, the official decisionmaker

15   rejected this as a ground for downgrade. Dkt. 23-6, Letter of Decision to Notice of

16   Proposed Downgrade (2/11/2020) (Exhibit F) at 3. Bacon explained that even though

17   she disagreed with plaintiff's approach to handling the situation, plaintiff's conduct did

18   not rise to the level of unacceptable conduct. *Id*. Accordingly, plaintiff's conduct of

19   interviewing an employee's husband was not considered in deciding to downgrade

20   plaintiff.

21   Based on the foregoing, the Court should grant defendant's motion for summary

22   judgment on plaintiff's retaliation claim because plaintiff has failed to provide evidence

23

24

25

REPORT AND RECOMMENDATION - 12

1  to establish a genuine issue of material facts regarding a causal connection between

2  plaintiff's alleged protected activity and defendant's alleged adverse action.

3        C.  <u>Disparate Treatment Claim</u>

4        Title VII prohibits covered employers from discriminating against any individual

5  based on that individual's race, color, religion, sex, or national origin. 42 U.S.C. §

6  2000e-2(a)(1). To establish her disparate treatment claim, plaintiff must provide

7  evidence giving rise to an inference of unlawful discrimination "'either through the

8  framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or with

9  direct or circumstantial evidence of discriminatory intent.'" *Freyd v. Univ. of Or.*, 990

10  F.3d 1211, 1228 (9th Cir. 2021) (quoting *Vasquez v. County of Los Angeles*, 349 F.3d

11  634, 640 (9th Cir. 2003)). A disparate treatment theory of liability requires proof of

12  discriminatory intent. *Freyd*, 990 F.3d at 1228.

13        Under the *McDonnell Douglas* framework, plaintiff must first make a prima facie

14  showing that: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for

15  her position; (3) plaintiff experienced an adverse employment action; and (4) similarly

16  situated individuals outside of plaintiff's protected class were treated more favorably.

17  *Freyd*, 990 F.3d at 1228. If plaintiff makes such a showing, the burden shifts to

18  defendant to show a legitimate, nondiscriminatory reason for the challenged conduct. *Id*.

19  Then plaintiff must show that the proffered non-discriminatory reason is pretextual. *Id*.

20        Here, plaintiff does not contend that she has produced direct or circumstantial

21  evidence of discrimination. Dkt. 31, Plaintiff's Opposition, at 17. Instead, plaintiff

22  contends that she has established a prima facie case of disparate treatment under the

23  *McDonnell Douglas* framework. *Id*.

24

25

1      Defendant's motion for summary judgment does not dispute that plaintiff is a

2   member of a protected class, that plaintiff was qualified for her position or that plaintiff

3   experienced an adverse employment action. Dkt. 22, Motion for Summary Judgment, at

4   11-12. Instead, defendant contends that plaintiff cannot make a prima facie case of

5   discrimination because plaintiff cannot identify a similarly situated individual outside

6   plaintiff's protected class and because defendant had a legitimate non-discriminatory

7   reason for plaintiff's downgrade. *Id.*

8      To make a prima facie showing of disparate treatment, plaintiff must establish

9   that a similarly situated individual outside of plaintiff's protected class was either treated

10  more favorably or that plaintiff was replaced by a similarly situated person outside of her

11  protected class. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (2002) (citing

12  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). Similarly situated means

13  similarly situated "in all material respects" – they must have a similar job and display

14  similar conduct. *Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018)

15  (citing *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009)).

16     Plaintiff has presented evidence that after she was terminated, she was

17  temporarily replaced by three white male employees. Dkt. 26, Declaration of Charles

18  Roberts at ¶ 7. Mr. Roberts indicated that at least one of these replacements was less

19  experienced and less qualified than plaintiff. *Id.* at ¶ 8. Mr. Roberts also indicated that

20  while plaintiff was in her position, employees targeted plaintiff with unfounded or

21  fabricated complaints and grievances. *Id.* at ¶ 5. Further, Mr. Roberts indicated none of

22  plaintiff's temporary replacements were targeted by the employees in the way in which

23  plaintiff was targeted. *Id.* at ¶ 8. Defendant indicated in the reply brief that plaintiff's

24

25

position has been permanently filled by Tammy Nicholson. Dkt. 37 at 6. It is unclear from the record whether Tammy Nicholson is a member of any of the same relevant protected classes as plaintiff.

Based on the forgoing, plaintiff has presented sufficient evidence that she was replaced by a similarly situated person outside of her protected class. Additionally, a reasonable jury could find that her replacements were more favorably treated because they have not been targeted by discrimination and harassment. The Court should hold that plaintiff has presented sufficient evidence, to make a prima facie showing of disparate treatment for purposes of the *McDonnell Douglass* analysis.

Next, the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for the challenged conduct and plaintiff must show that the proffered non-discriminatory reason is pretextual. A plaintiff can establish pretext by either: (1) presenting direct evidence showing that unlawful discrimination more likely than not motivated the adverse action or (2) by showing that the proffered explanation is internally inconsistent or otherwise not believable. *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015). When considering plaintiff's evidence, the Court must consider direct and circumstantial evidence equally. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).  The burden of raising a triable issue of pretext is not an onerous one because "the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record." *France*, 795 F.3d at 1175.

The Ninth Circuit has held that a plaintiff is not required to show that the final decisionmaker made discriminatory comments to create a genuine dispute of material

1   fact on pretext. *France*, 795 F.3d at 1176 (citing *Poland v. Chertoff*, 494 F.3d 1174,

2   1182 (9th Cir. 2007). A plaintiff can meet the pretext requirement by establishing a

3   causal link showing that a biased subordinate influenced or was involved in the decision

4   or decision-making process. *Id.* at 1176. When considering the *McDonnell Douglas*

5   analysis on a motion for summary judgment, the Court is still required to view the

6   evidence and draw all inferences in the light most favorable to the non-moving party. *Id*.

7          Defendant proffered a nondiscriminatory reason, arguing that the downgrade

8   determination was made by an independent unbiased decision maker and was based

9   on plaintiff's conduct. Dkt. 22 at 12. The letter of decision stated that the decision to

10  downgrade plaintiff was based on her alleged conduct of inappropriately instructing an

11  employee to write and sign a statement indicating acceptance of a modified

12  compensation scheme, and acting in a violent manner in the workplace. Dkt. 23-6,

13  Letter of Decision to Notice of Proposed Downgrade (2/11/2020) (Exhibit F).

14         In support of her opposition, plaintiff submitted the declaration of Charles

15  Roberts. Dkt. 26. Mr. Roberts states that employees at the Shelton office targeted

16  plaintiff with unfounded or fabricated grievances and complaints. Dkt. 26 at ¶ 5. The

17  declaration states that USPS investigated allegations that plaintiff acted violently – the

18  same allegations that were later raised in the proposed downgrade – yet found that the

19  investigation could not support discipline. *Id.* at ¶¶ 11-12. Mr. Roberts also states that

20  before plaintiff was in the position, one female and two males held the position of

21  Shelton Postmaster. *Id.* at ¶ 6. Mr. Roberts asserts that he was not aware of the male

22  Postmasters being subject to harassment, but that the female Postmaster was

23  transferred after being threatened with physical violence by employees. *Id.* Further, Mr.

24

25

1  Roberts explains that after plaintiff was replaced by a male Postmaster, the harassing

2  behavior ceased. *Id*. at ¶ 7.

3      Mr. Roberts also states that the Human Resource Manager and Labor Relations

4  Manager at the Shelton office made comments about plaintiff's race. Dkt. 26 at ¶ 13. Mr.

5  Roberts asserts that these two USPS managers "made comments and asked questions

6  about whether Dawn Lui and I were married, related by marriage, or engaged in a

7  sexual relationship." *Id*. And, Mr. Roberts states one of the managers "made these

8  comments and questions because she knew that I was married to an Asian woman." *Id*.

9      Mr. Roberts states that the Human Resource Manager that made racists

10  comments about plaintiff, together with the USPS District Manager, these managers

11  expressed that they wanted to remove plaintiff from the USPS; they pressured Mr.

12  Roberts to discipline plaintiff. Dkt. 26 at ¶ 15. Mr. Roberts also states that after he

13  refused to sign a proposed downgrade against plaintiff, the USPS District Manager

14  temporarily removed Mr. Roberts from his position and his replacement signed the

15  proposed downgrade. Dkt. 26 at ¶ 16-18.

16      Plaintiff submitted her own declaration. Plaintiff asserts that employees in the

17  Rural Carriers Union filed unfounded and harassing grievances against her. Dkt. 27 at

18  ¶¶ 5-9, 21-23. Plaintiff states that she received negative comments and questions about

19  her race. *Id*. at ¶¶ 9, 25, 29, 32.  Plaintiff also asserts that she reported the harassment

20  and comments that she experienced to her supervisor. *Id*. at ¶¶ 17, 20.

21      Plaintiff has provided evidence that several employees at the Shelton office

22  expressed animus and bias against plaintiff based on her status as a member of a

23  protected class. Additionally, plaintiff has presented evidence that the USPS District

24

25

REPORT AND RECOMMENDATION - 17

1   Manager and Human Resource Managers that initiated plaintiff's proposed downgrade

2   were biased against plaintiff. Further, plaintiff presented evidence that USPS

3   investigations did not support discipline, yet employees continued to file false reports

4   and grievances against plaintiff because the employees held animus against plaintiff

5   based on her race, national origin and gender. These allegedly fabricated grievances

6   were the basis for plaintiff's proposed downgrade.

7        The Court should hold that plaintiff has presented sufficient evidence to raise a

8   genuine dispute of material fact concerning whether the USPS District Manager, Human

9   Resource Manager, Labor Relations Manager, and employees, expressed bias and

10  discrimination that ultimately influenced the decision to downgrade plaintiff.

11       D.  Hostile Work Environment Claim

12       Defendant argues that plaintiff's hostile work environment claims should be

13  dismissed because they are time-barred and because plaintiff has failed to demonstrate

14  that there was "severe and pervasive" conduct based on plaintiff's gender, age, race, or

15  national origin. Dkt. 22 at 12-18.

16            1.  Timely Exhaustion of Administrative Remedies

17       To bring a hostile work environment claim, plaintiff must demonstrate that she

18  exhausted her administrative remedies by notifying an EEO counselor of discriminatory

19  conduct within 45 days of the conduct. *Sommatino v. United States*, 255 F.3d 704, 710

20  (9th Cir. 2001). If the matter is not resolved, plaintiff could then submit a formal

21  administrative complaint. *Id.* "Failure to comply with this regulation is 'fatal to a federal

22  employee's discrimination claim.'" *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th

23  Cir. 2003) (quoting *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002)).

24

25

REPORT AND RECOMMENDATION - 18

1    "A hostile work environment claim is comprised of a series of separate acts that

2    collectively constitute one 'unlawful employment practice.'" *AMTRAK v. Morgan*, 536

3    U.S. 101, 117 (2002). To determine timeliness, the Court must consider the entire time

4    period of the hostile work environment. *Scott v. Gino Morena Enters., LLC*, 888 F.3d

5    1101, 1112 (9th Cir. 2018). So long as one act within the series forming a hostile work

6    environment occurred within the filing period, the Court can consider the entire time

7    period of the hostile work environment. *Scott*, 888 F.3d at 1112; *AMTRAK*, 536 U.S. at

8    117 ("Provided that an act contributing to the claim occurs within the filing period, the

9    entire time period of the hostile environment may be considered by a court for the

10    purposes of determining liability."). Yet, Title VII precludes claims based on discrete acts

11    of discrimination or retaliation occurring outside of the statutory period, each discrete act

12    triggers a new 45-day period to file a charge related to the discrete act. *Scott*, 888 F.3d

13    at 1112.

14        Plaintiff contends that the Court should apply a tangible employment action

15    theory of liability when determining plaintiff's hostile work environment claims. Dkt. 31 at

16    24. A tangible employment action theory of liability creates vicarious liability when a

17    supervisor abuses their authority by conditioning a job, job benefit or the absence of a

18    job detriment upon an employee's acceptance of sexual conduct. *Craig v. M&O*

19    *Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007); *Holly D. v. Cal. Inst. Of Tech.*, 339

20    F.3d 1158, 1167 (9th Cir. 2003). Plaintiff's complaint does not allege, and plaintiff has

21    not provided evidence that any USPS employee committed any sexual misconduct

22    against plaintiff or that any of the adverse employment actions occurred as a result of

23

24

25

1    plaintiff declining sexual conduct. Accordingly, the tangible employment action theory of

2    liability is inapplicable to plaintiff's hostile workplace claim.

3         It is undisputed that on November 18, 2019, plaintiff filed an informal EEO

4    complaint. Dkt. 23-12, EEO Alternative Dispute Resolution Specialist's Inquiry Report,

5    at 2; Dkt. 23-12, EEO Grievance, at 8-11. The EEO grievance alleges that the

6    discriminatory action was plaintiff's proposed downgrade – issued on October 28, 2019.

7    Dkt. 23-12 at 8; Dkt. 23-3, Notice of Proposed Adverse Action – Downgrade

8    (10/28/2019).

9         Accordingly, by filing the EEO grievance on November 18, 2019, plaintiff initiated

10   the administrative remedies process within 45 days of the alleged discriminatory

11   conduct – plaintiff's proposed downgrade. Plaintiff's EEO grievance alleged an ongoing

12   hostile work environment starting in 2017 and culminating in plaintiff's proposed

13   downgrade. Dkt. 23-12 at 10-11. In support of her claims, plaintiff provided examples of

14   false allegations and unsupported investigations in November 2017, March 2018,

15   January 2019, March 2019, April 2019 and November 2019. *Id.*

16        A reasonable jury could determine that plaintiff's proposed downgrade was the

17   culmination of a series of separate discriminatory acts that collectively reflect unlawful

18   discrimination. Because one of the acts in the series occurred within the filing period,

19   the jury would be able to consider the entire period of the hostile work environment.

20        The Court should find that remaining questions of fact preclude a finding that

21   plaintiff failed to timely exhaust her administrative remedies.

22

23

24

25

REPORT AND RECOMMENDATION - 20

1

2.  <u>Hostile Work Environment Claim</u>

2        To succeed on a hostile work environment claim, plaintiff must establish: (1)

3    plaintiff was subjected to verbal or physical conduct based on membership in a

4    protected class, (2) the conduct was unwelcome, and (3) the conduct was so severe or

5    pervasive that it altered the conditions of employment and created an abusive work

6    environment. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021). "It is

7    well established that an employer can create a hostile work environment by failing to

8    make immediate and corrective action in response to a coworker's or third party's

9    sexual harassment or racial discrimination the employer knew or should have known

10   about." *Id*.

11       The purpose of the severe or pervasive requirement is to "filter out complaints

12   attacking ordinary tribulations of the workplace," like sporadic and occasional use of

13   offensive language. *Fried*, 18 F.4th at 648. The hostile work environment must be one

14   that is both objectively and subjectively offensive – one that a reasonable person would

15   find hostile or abusive and one that the victim in fact found to be hostile or abusive. *Id*.

16   When determining whether a work environment is sufficiently hostile or abusive to

17   constitute a Title VII violation, the Court must consider all circumstances, including: "the

18   frequency of the discriminatory conduct; its severity; whether it is physically threatening

19   or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

20   with an employee's work performance." *Christian v. Umpqua Bank,* 984 F.3d 801, 809

21   (9th Cir. 2020).

22       The level of severity necessary to establish a claim "varies inversely with the

23   pervasiveness or frequency of the conduct." *Christian*, 984 F.3d at 809. The Court has

24

25

acknowledged that the real impact of workplace behavior depends on the surrounding circumstances, expectations and relationships. *Id.* at 809-10. Conduct that might seem innocuous by itself, may reach the level of hostile work environment when viewed within the context of a pattern of discrimination and harassment. *Id.* at 810.

It is not a requirement that the offensive comments be made directly to the employee for a work environment to be considered hostile. *Id.* at 810; *Woods v. Graphic Communications*, 925 F.2d 1195, 1198, 1202 (9th Cir. 1991) (finding harassment sufficiently severe or pervasive, even when plaintiff heard about most of the incidents second hand through other employees).

Defendant argues that plaintiff's hostile work environment claims fail because plaintiff's claims do not meet the severe and pervasive requirement. Dkt. 22 at 16-18.

During plaintiff's deposition, she testified that USPS employees informed her that other employees spoke negatively about her because of her race and national origin. Dkt. 23-2, Deposition of Dawn Lui (08/2/2022) (Exhibit B) at 6. Plaintiff testified that USPS employees made comments that she was "too Chinese", and that had been informed that employees would call plaintiff a "bitch", "Asian bitch," and "Chinese bitch." Dkt. 23-2 at 6-7. Plaintiff also stated that her supervisor was aware of these disparaging comments because he informed plaintiff that other USPS employees would call plaintiff gay, the employees' thought plaintiff was "too Chinese", and that the employees did not want an Asian female Postmaster in Shelton. *Id.* at 8, 15.

Plaintiff stated that Charles Robert informed her of these comments, informed plaintiff that the other employees did not like her because she is Chinese, and made comment about other employees being racist between 2017 and 2019. *Id.* at 10. Plaintiff

1    also expressed a belief that Karen Bacon did not believe plaintiff's testimony because of

2    her race and national origin, favoring instead untrue allegations from other employees

3    when deciding to downgrade plaintiff. *Id.* at 12-13. Plaintiff testified that a USPS

4    employee made a comment about the way plaintiff spoke, mentioning that "Chinese-

5    English" was hard for the employee to understand -- plaintiff reported the interaction to

6    her supervisor. *Id.* at 37, 40.

7        In addition to her deposition testimony, plaintiff has submitted her own

8    declaration and the declaration of Charles Roberts in support of plaintiff's opposition to

9    the motion for summary judgment. Dkt. 26, Declaration of Charles Roberts; Dkt. 27,

10   Declaration of Dawn Lui. Mr. Roberts testified that employees at the Shelton Post Office

11   had previously targeted a female supervisor with unfounded grievances and threats of

12   violence. Dkt. 26, at ¶¶ 6-7. Mr. Roberts also testified that employees at the Shelton

13   Post Office, including the Human Resource Manager and the USPS District Manager,

14   made negative comments about plaintiff's race, national origin, and gender, and made

15   unfounded allegations against plaintiff. *Id.* at ¶¶ 5, 11-12, 13. Further, Mr. Roberts states

16   that the Human Resource Manager and the USPS District Manager expressed wanting

17   to remove plaintiff, pressured Mr. Roberts to sign a proposed downgrade against

18   plaintiff and ultimately temporarily removed Mr. Roberts from his position when he

19   refused to sign the proposed downgrade. *Id.* at ¶¶ 15-18. Plaintiff's declaration states

20   that she reported to her supervisors that employees at the Shelton Post Office filed

21   unfounded grievances against her and made negative comments about plaintiff's race.

22   Dkt. 27 at ¶¶ 5-9, 17, 20, 21-23, 25, 29, 32.

23

24

25

REPORT AND RECOMMENDATION - 23

1    Plaintiff has presented sufficient evidence to raise a question of fact regarding

2 the issue of whether the conduct complained of was sufficiently severe or pervasive to

3 alter the conditions of employment and create an abusive work environment. Plaintiff

4 has presented testimony that employees at the Shelton Post Office – including

5 supervisors and Human Resource representatives – engaged in a pattern of derogatory

6 conduct based on plaintiff's membership in a protected class. Plaintiff testified that she

7 reported this conduct to her supervisors and no corrective action was taken. Further,

8 plaintiff contends that this harassing conduct ultimately led to unfounded grievances and

9 adverse employment actions that affected plaintiff's position.

10    Based on the foregoing, genuine questions of material facts remain because a

11 reasonable jury could determine the issue of plaintiff's hostile work environment claim in

12 favor of either party. The Court should deny defendant's motion for summary judgment

13 on this issue.

14    E.  ADEA Claim

15    Defendant's motion for summary judgment argues that the Court should reject

16 plaintiff's claims for compensatory damages under the Age Discrimination and

17 Employment Act. Dkt. 22 at 18-19.

18    The ADEA makes it unlawful for an employer to discriminate against employee

19 "because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA employs an

20 enforcement scheme designed to help employers and employees "find ways of meeting

21 problems arising from the impact of age on employment." *Ahlmeyer v. Nev. Sys. of*

22 *Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009). Under the ADEA, a plaintiff cannot

23 recover damages for emotional pain and suffering. *Stilwell v. City of Williams*, 831 F.3d

24

25

1234, 1247 (9th Cir. 2016). The available remedies under the ADEA are limited to the recovery of unpaid wages, unpaid overtime pay, reasonable attorney's fees and costs, and judgments compelling employment, reinstatement, or promotion. *Babb v. Wilkie*, __ U.S. __, 140 S. Ct. 1168, 1171 (2020); *Ahlmeyer*, 555 F.3d at 1059.

Plaintiff's prayer for relief requests damages that are available under the ADEA – economic damages and reinstatement to her previously occupied position. Dkt. 15 at 9. Plaintiff also requests relief that would not be available under the ADEA such as damages for pain and suffering, mental anguish, emotional distress, and humiliation. Dkt. 15 at 9. Plaintiff does not specify whether the damages for emotional pain and suffering are for the ADEA claims or plaintiff's Title VII claims. Accordingly, the Court should not strike or dismiss plaintiff's prayer for relief requesting compensatory damages for emotional pain and suffering.

## CONCLUSION

For the reasons set forth herein, the Court should grant in part and deny in part, defendant's motion for summary judgment. Dkt. 22. The Court should:

- Deny plaintiff's surreply (Dkt. 40) and should decline to strike the Second Declaration of Katie D. Fairchild or defendant's reference to Tammy Nicholson;

- Grant defendant's motion for summary judgment on plaintiff's retaliation claim;

- Deny defendant's motion for summary judgment on plaintiff's disparate treatment claim;

- Deny defendant's motion for summary judgment on plaintiff's hostile work environment claim; and

- Deny defendant's motion for summary judgment on plaintiff's claims for emotional pain and suffering.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **January 13, 2023**.

Dated this 29th day of December, 2022.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 26