1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
                                    AT TACOMA
7

8     DAWN LUI,                                CASE NO. 3:21-cv-05030-BHS-TLF

                        Plaintiff,             ORDER
9           v.

10    LOUIS DEJOY,

11                      Defendant.

12

13          This matter is before the Court on Magistrate Judge Theresa L. Fricke's Report

14    and Recommendation (R&R), Dkt. 46, recommending that the court grant in part and

15    deny in part Defendant United States Postal Service's (USPS)[1] motion for summary

16    judgment, Dkt. 22. USPS objects to the R&R, Dkt. 47, as does Plaintiff Dawn Lui, Dkt.

17    48, 49.

18          The R&R correctly recommends that the Court grant USPS's motion for summary

19    judgment on Lui's retaliation claim. However, the R&R incorrectly recommends that the

20    Court deny the motion on Lui's disparate treatment and hostile work environment claims.

21    _____

22         [1] The defendant in this matter is the Postmaster General of USPS, Louis DeJoy. For
      clarity, the Court refers to the defendant as USPS.

1  Accordingly, USPS's motion for summary judgment is granted and all of Lui's claims are

2  dismissed with prejudice.

3  ### I.   BACKGROUND

4      Lui was the postmaster of the United States post office in Shelton, Washington.

5  Dkt. 46 at 2. On October 28, 2019, Carter Clark, the manager of post office operations for

6  USPS's Seattle district, issued to Lui a notice of a proposed downgrade of her position.

7  *Id.*; Dkt. 23-3 at 2, 13. The notice specified three grounds for the proposed downgrade:

8  (1) that Lui improperly instructed a rural carrier to accept a compensation scheme for

9  working on non-scheduled workdays that was inconsistent with a national employment

10  agreement between USPS and the National Rural Letter Carriers' Association; (2) that

11  Lui behaved in a seemingly violent manner on one occasion by throwing a clipboard onto

12  the ground and kicking packages and boxes on the workroom floor; and (3) that Lui

13  improperly invited an employee's visibly-upset husband to an employee-only area of the

14  workplace to investigate the husband's claim that another employee sexually harassed his

15  wife. Dkt. 23-3 at 2.

16      The notice informed Lui that the postmaster of the Tacoma post office, Karen

17  Bacon, would ultimately decide whether to accept the proposal to downgrade Lui's

18  position. *Id.* at 13. The notice further provided that Lui could send to Bacon a response

19  challenging the proposal. *Id.* Lui did so, denying any wrongdoing and claiming that other

20  employees had subjected her to a hostile work environment. Dkt. 23-5 at 2–3.

21      On November 18, 2019, Lui notified an Equal Employment Opportunity (EEO)

22  counselor that she had been discriminated against at the workplace. Dkt. 23-12. Lui

1  claimed that she had been subjected to an "ongoing hostile work environment since 2017,

2  and discrimination based on Race, Color, Sex, National Origin, Age and Retaliation

3  when . . . she received a Notice of Proposed Adverse Action-Downgrade letter dated

4  10/28/19." *Id.* at 2.

5         On February 11, 2020, Bacon issued a decision concerning the proposal to

6  downgrade Lui's position. Dkt. 23-6. Bacon found that the record before her supported

7  grounds one and two and concluded that Lui engaged in unacceptable conduct. *Id.* at 2.

8  Bacon also concluded that Lui did not engage in unacceptable conduct with respect to the

9  third ground. *Id.* Bacon decided to downgrade Lui's position from a level 21 postmaster

10 stationed in Shelton, WA, to a level 18 postmaster stationed in Roy, WA. *Id.*

11        Lui subsequently submitted a formal EEO complaint, claiming that "USPS has

12 been subjecting [her] to a continuing hostile work environment from approximately 2017

13 to October 28, 2019 based on her Race, Gender, National Origin, Religion, Age." Dkt.

14 23-13 at 4. Lui asserted that employees falsely accused her of the conduct that served as

15 the basis for the decision to downgrade her position. *Id.* at 4–7. Lui also appealed

16 Bacon's decision to the Merit Systems Protection Board. *See* Dkt. 23-14. An

17 administrative law judge affirmed Bacon's decision. *Id.* at 2–3, 25.

18        Lui sued USPS in this Court alleging claims of discrimination, hostile work

19 environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

20 § 2000e *et seq*. Dkt. 1, ¶¶ 6.1–6.22. Lui subsequently amended her complaint, clarifying

21 that USPS discriminated against her based on her race, sex, and national origin. Dkt. 15,

22 ¶¶ 6.1–6.17. Lui also added claims of discrimination, retaliation, and hostile work

1  environment under the Age Discrimination and Employment Act (ADEA), 29 U.S.C.

2  § 621 *et seq. Id.* ¶¶ 6.23–6.26.

3      USPS moved for summary judgment, arguing that Lui cannot establish a genuine

4  issue of material fact on any of her claims and that it is entitled to judgment as a matter of

5  law. Dkt. 22. It also argued that Lui failed to exhaust her administrative remedies

6  concerning the hostile work environment claim because she did not timely notify an EEO

7  counselor of any act on which this claim is based within 45 days of that act occurring. *Id.*

8  at 12–14. USPS finally moved to dismiss any claim for compensatory damages under the

9  ADEA, asserting that the ADEA does not authorize such damages. *Id.* at 18–19.

10      Lui opposed USPS's motion. Dkt. 31. After USPS replied, Lui filed a surreply,

11  requesting the Court to strike certain arguments and evidence presented in support of

12  USPS's reply. Dkt. 40 at 1. In the alternative, Lui requested the Court to consider a

13  supplemental declaration of herself so that she could respond to these arguments and

14  evidence. *Id.*

15      Judge Fricke entered an R&R, recommending that the Court grant in part and deny

16  in part the summary judgment motion. Dkt. 46. The R&R recommends that the Court

17  grant the motion only insofar as it seeks to dismiss Lui's retaliation claim. *Id.* at 9–13. In

18  so doing, the R&R declines to consider a theory of retaliation that Lui did not plead in her

19  amended complaint. *Id.* at 10–11. The R&R also concludes that Lui timely notified the

20  EEO counselor of the basis for her hostile work environment claim. *Id.* at 18–20. It

21  further concludes that a fact issue exists concerning both the hostile work environment

22  claim and the disparate treatment claim. *Id.* at 13–18, 21–24.

The R&R also recommends that the Court deny USPS's motion to dismiss on summary judgment Lui's request for compensatory damages. *Id.* at 24–25. Finally, it recommends that the Court both deny Lui's motion to strike and decline to consider the declaration that she submitted in support of a surreply. *Id.* at 7–9.

Both parties object to the R&R Dkts. 47, 48, 49. The objections are addressed below.

## II.   DISCUSSION

### A.   Standard of Review

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). A party properly objects when the party files "specific written objections" to the report and recommendation as required under Federal Rule of Civil Procedure 72(b)(2).

"[I]n providing for a de novo determination . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (internal quotation marks omitted). Accordingly, when a district court adopts a magistrate judge's recommendation, the district court is required to merely "indicate[] that it reviewed the record de novo, found no merit to . . . [the] objections, and summarily adopt[] the magistrate judge's analysis in [the]

report and recommendation." *United States v. Ramos*, 65 F.4th 427, 2023 WL 2850376, at *6 (9th Cir. 2023).

**B.    Lui's Objection to the R&R Concerning Her Surreply**

Lui objects to the R&R's recommendation that the Court should not consider a declaration that she filed—for the first time—in support of a surreply to the motion for summary judgment.[2] Dkt. 49-1 at 8. The Court has reviewed de novo the issues pertaining to Lui's objection and concludes that her objection lacks merit. Accordingly, Lui's objection is OVERRULED and the R&R is ADOPTED insofar as it recommends that the Court decline to consider evidence that Lui improperly filed for the first time in support of a surreply.

**C.    Lui's Objections to the R&R Concerning Her Retaliation Claim**

Lui also objects to the R&R's recommendation that the Court dismiss her retaliation claim on summary judgment. Dkt. 49-1. She asserts that a genuine issue of material fact exists as to whether USPS retaliated against her for investigating an allegation of workplace sexual harassment. *Id.* at 4–6. She also contends that the R&R improperly declines to consider her theory that USPS retaliated against her for reporting to her supervisor that other employees had discriminated against her based on her race and sex. *Id.* at 6–8; *see* Dkt. 31 at 13–14.

---

[2] Lui does not object to the R&R's recommendation that the Court deny her request to strike certain arguments and evidence in USPS's reply brief. *See* Dkt. 49-1. Accordingly, this recommendation is ADOPTED and the request to strike is DENIED.

1        The R&R concludes that Lui's retaliation claim fails for two reasons. First, the

2  R&R reasons that Lui does not establish a causal connection between her act of

3  investigating an allegation by a non-employee husband that a USPS supervisor sexually

4  harassed his employee wife and USPS's decision to downgrade her position. Dkt. 46 at

5  12. Second, the R&R explains that Lui's alternative theory in support of her retaliation

6  claim—that USPS retaliated against her because she reported that other employees had

7  discriminated against her—is not alleged in her amended complaint and is, therefore,

8  improperly raised for the first time in response to USPS's summary judgment motion. *Id.*

9  at 10–11.

10        The Court has reviewed de novo the issues pertaining to these objections and

11  concludes that these objections also lack merit. In so doing, the Court adds that Lui's

12  retaliation claim also fails because her act of conducting an internal investigation into an

13  allegation of workplace sexual harassment is not a protected activity under Title VII. *See*

14  *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir.

15  2000) (a prima facie case of retaliation requires the plaintiff to show, among other things,

16  that "she engaged in activity protected under Title VII"). Title VII provides that an

17  employee engages in a protected activity if she has either (1) "opposed any practice made

18  an unlawful employment practice by this subchapter," or (2) "made a charge, testified,

19  assisted, or participated in any manner in an investigation, proceeding, or hearing under

20  this subchapter." 42 U.S.C. § 2000e-3(a); *see also Hashimoto v. Dalton*, 118 F.3d 671,

21  680 (9th Cir. 1997).

22

1    Lui did not oppose any unlawful employment practice by merely investigating an

2    allegation of workplace sexual harassment. This allegation was raised by a non-employee

3    husband whose employee wife informed Lui that, contrary to her husband's belief, she

4    had not been sexually harassed. Dkt. 27, ¶ 14. The alleged harasser, a supervisor, also

5    denied any wrongdoing. *Id.* As a result, Lui closed the investigation and concluded that

6    the allegations were not true. *Id.*; Dkt. 31 at 14. Through this investigation, Lui did not

7    oppose any unlawful employment practice. Furthermore, by conducting this internal

8    investigation, Lui did not assist or participate in any manner in an investigation under

9    Title VII. The "participation clause" under 42 U.S.C. § 2000e-3 does not apply to internal

10   investigations and, instead, applies to only investigations conducted by the Equal

11   Employment Opportunity Commission. *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th

12   Cir. 1990). Therefore, Lui did not engage in a protected activity by investigating the

13   husband's allegation of workplace sexual harassment.

14    Next, although the Court agrees with the R&R that Lui improperly raised her other

15   theory of retaliation for the first time in response to USPS's summary judgment motion,

16   the Court clarifies that the R&R imprecisely states that "[a] plaintiff cannot rely on new

17   factual allegations or legal theories raised for the first time in opposition to a motion for

18   summary judgment." Dkt. 46 at 10 (citing *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d

19   963, 968–69 (9th Cir. 2006)). This statement is overly broad. A plaintiff may generally

20   rely on factual allegations raised for the first time in response to a motion for summary

21   judgment. Indeed, through discovery, plaintiffs often become aware of facts that were

22

1    unknown—or even unknowable—to them when they filed suit. There is no requirement

2    that every fact in support of a claim be articulated in the plaintiff's complaint.

3    　　　However, Lui's response to the motion for summary judgment does not merely

4    raise factual allegations that are not alleged in her amended complaint. It rather presents a

5    new *theory* in support of a retaliation claim that is not alleged in the amended complaint.

6    Concerning her retaliation claim, the amended complaint alleges that USPS retaliated

7    against her for investigating the allegation of workplace sexual harassment. *See* Dkt. 15,

8    ¶¶ 6.20–6.22. It does not allege that USPS retaliated against her for reporting to her

9    supervisor that other employees discriminated against her based on her race and sex. *See*

10   *generally id.* Because this new theory effectively amounts to a new retaliation claim that

11   is distinct from the retaliation claim alleged in the amended complaint, the R&R correctly

12   recommends that the Court decline to consider it. *See Navajo Nation v. U.S. Forest Serv.*,

13   535 F.3d 1058, 1080 (9th Cir. 2008); *Pickern*, 457 F.3d at 968–69; *Coleman v. Quaker*

14   *Oats Co.*, 232 F.3d 1271, 1292–94 (9th Cir. 2000).

15   　　　Accordingly, the R&R is ADOPTED insofar as it recommends that the Court

16   grant USPS's motion for summary judgment on Lui's retaliation claim. Lui's objections

17   otherwise are OVERRULED, USPS's motion for summary judgment on the retaliation

18   claim is GRANTED, and the retaliation claim is DISMISSED with prejudice.

19   **D.    USPS's Objections to the R&R Concerning the Disparate Treatment Claim**

20   　　　USPS objects to the R&R's conclusion that Lui raises genuine issues of material

21   fact concerning her disparate treatment claim. Dkt. 47 at 3–7. USPS asserts that Lui does

22

1    not establish a prima facie case of disparate treatment under the *McDonnell Douglas*[3]

2    framework because she fails to adduce any evidence that USPS treated a similarly

3    situated employee more favorably than her. *Id.* at 3–5. USPS also contends that Lui fails

4    to adduce evidence indicating that Bacon's legitimate reasons for downgrading her

5    position are pretextual. *Id.* at 5–7.

6        Lui responds that she satisfies her prima facie showing of disparate treatment

7    because she was qualified for her position and, after USPS downgraded her position, she

8    was replaced by individuals outside her protected class. Dkt. 50 at 2. Lui also asserts that

9    she satisfies her prima facie showing of disparate treatment because USPS treated her

10    less favorably than other similarly situated individuals outside her protected class. *Id.* at

11    2–3. She finally asserts that a fact issue exists concerning pretext because several

12    employees, including a human resource manager and a district manager, "had bias

13    against" her and "drove the decision to downgrade" her position. *Id.* at 3.

14        "Title VII forbids certain employers from 'discriminat[ing] against any individual

15    with respect to his compensation, terms, conditions, or privileges of employment,

16    because of such individual's race, color, religion, sex, or national origin.'" *Campbell v.*

17    *Haw. Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018) (quoting 42 U.S.C. § 2000e-

18    2(a)(1)). Lui asserts that USPS subjected her to disparate treatment because of her race,

19    sex, and national origin. Dkt. 15, ¶¶ 6.2–6.9.

20

21

---

22        [3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

1    "To establish disparate treatment under Title VII, a plaintiff 'must offer evidence

2    that gives rise to an inference of unlawful discrimination, either through the framework

3    set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence

4    of discriminatory intent.'" *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1228 (9th Cir. 2021)

5    (quoting *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003)). As the R&R

6    correctly notes, Lui does not contend that she has adduced direct or circumstantial

7    evidence of discriminatory intent. *See* Dkt. 31 at 17–23; Dkt. 46. Instead, she asserts that

8    she has adduced sufficient evidence to satisfy the *McDonnell Douglas* framework.

9    Under this framework, a plaintiff must first "make a prima facie case of

10   discrimination, which requires a showing that '(1) she is a member of a protected class;

11   (2) she was qualified for h[er] position; (3) she experienced an adverse employment

12   action; and (4) similarly situated individuals outside her protected class were treated more

13   favorably.'" *Freyd*, 990 F.3d at 1228 (cleaned up) (quoting *Fonseca v. Sysco Food Servs.*

14   *of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)). To satisfy the fourth element, a plaintiff

15   "must identify employees outside her [protected class] who were similarly situated to her

16   'in all material respects' but who were given preferential treatment; they must 'have

17   similar jobs and display similar conduct.'" *Campbell*, 892 F.3d at 1015 (quoting

18   *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009)).

19   If the plaintiff establishes a prima facie case, "[t]he burden of production, but not

20   persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory

21   reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d

22   1115, 1123–24 (9th Cir. 2000). Although the burden of production shifts to the employer,

1    the burden of persuasion "remains at all times with the plaintiff." *Texas Dep't of Cmty.*

2    *Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

3            If the employer satisfies its burden of production, "the plaintiff must show that the

4    articulated reason is pretextual 'either directly by persuading the court that a

5    discriminatory reason more likely motivated the employer or indirectly by showing that

6    the employer's proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at

7    1124 (quoting *Burdine*, 450 U.S. at 256). "In judging whether [an employer's] proffered

8    justifications [are] 'false,' it is not important whether they were *objectively* false."

9    *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis in

10   original). Rather, courts require only "that an employer honestly believed its reason for

11   its actions, even if its reason is 'foolish or trivial or even baseless'" *Id.* (quoting *Johnson*

12   *v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)).

13           As an initial matter, the Court clarifies what Lui must show to establish a prima

14   facie case of disparate treatment. Lui contends that, to satisfy the fourth element of her

15   prima face case, she need not demonstrate that USPS treated similarly situated

16   individuals outside her protected class more favorably. Dkt. 50 at 2. Instead, she asserts

17   that she must demonstrate merely that she was "replaced by a [person outside her

18   protected class] with equal or inferior qualifications." Dkt. 50 at 2 (quoting *Aguirre v.*

19   *Schomac Grp., Inc.*, No. CV 04-1182 PHX-DGC, 2005 WL 8160552, at *2 (D. Ariz. July

20   6, 2005)). Similarly, the R&R, Dkt. 46 at 14, cites the Ninth Circuit's opinion in

21   *Villiarimo v. Aloha Island Air, Inc.*, which provides that a plaintiff who alleged that she

22   was terminated because of her sex could satisfy the fourth element of her prima facie case

1    by showing that "similarly situated men were treated more favorably, *or her position was*

2    *filled by a man*." 281 F.3d at 1062 (emphasis added).

3         Both *Aguirre* and *Villiarimo* are inapposite. These cases concern plaintiffs who

4    claimed that they were *terminated* because of their membership in a protected class. *See*

5    *Aguirre*, 2005 WL 8160552, at *2; *Villiarimo*, 281 F.3d at 1061–62. USPS did not

6    terminate Lui. It downgraded her position. Following its decision in *Villiarimo*, the Ninth

7    Circuit explained in a case involving a plaintiff who was *demoted* that the plaintiff "*must*

8    offer proof . . . that the plaintiff's employer treated the plaintiff differently than a

9    *similarly situated* employee who does not belong to the same protected class as the

10   plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)

11   (emphasis added). Therefore, to satisfy her prima face case of disparate treatment, Lui

12   must demonstrate that USPS treated a similarly situated employee outside of her

13   protected class more favorably.

14        Having clarified Lui's burden under her prima facie case, the Court addresses the

15   R&R's recommendation concerning Lui's disparate treatment claim. The R&R concludes

16   that Lui establishes a prima facie showing of disparate treatment. Dkt. 46 at 14–15. It

17   reasons that Lui presents evidence that, after USPS downgraded her position, she was

18   "temporarily replaced by three white male employees," at least one of whom was less

19   qualified for the position than Lui. *Id.* at 14. It further reasons that Lui adduces evidence

20   that, while she served as the Shelton postmaster, "*employees* targeted [her] with

21   unfounded or fabricated complaints and grievances" and that these employees did not

22   target the "temporary replacements" in a similar manner. *Id.* (emphasis added).

1   Considering this evidence, the R&R concludes that Lui "has presented sufficient

2   evidence that she was replaced by a similarly situated person outside her protected class"

3   and that "her replacements were more favorably treated because they have not been

4   targeted by discrimination and harassment." *Id.* at 15.

5          For at least two reasons, the Court declines to adopt the R&R's recommendation.

6   First, Lui does not adduce *any* evidence indicating that she was *similarly situated* to the

7   three white males who temporarily served as the Shelton postmaster after USPS

8   downgraded her position. To reiterate, to be similarly situated to the plaintiff, the other

9   employee "must 'have [a] similar job[] *and display similar conduct*.'" *Campbell*, 892

10  F.3d at 1015 (emphasis added) (quoting *Nicholson*, 580 F.3d at 1125). Lui does not even

11  claim that any of these three white males were reported to have engaged in conduct

12  similar to the conduct that she was reported to have engaged in and that served as the

13  basis for USPS's decision to downgrade her position. For this reason alone, the Court

14  disagrees with the R&R.

15         Second, under these circumstances, the fact that Lui's subordinates and other

16  employees discriminated against her is immaterial to her disparate treatment claim

17  against her employer. Bacon downgraded Lui's position after conducting an independent

18  investigation into Lui's conduct. *See* Dkt. 23-6; Dkt. 23-11 at 3–6. There is no evidence

19  indicating that Bacon's decision was influenced by the discriminatory bias of any other

20  employee.

21         The R&R recommends that "[t]he Court should hold that plaintiff has presented

22  sufficient evidence to raise a genuine dispute of material fact concerning

1    whether . . . USPS District Manager [Darrell Stoke], Human Resource Manager [Alexis

2    Delgado], Labor Relations Manager [Lacey O'Connell], and employees, expressed bias

3    and discrimination that ultimately influenced the decision to downgrade plaintiff." Dkt.

4    46 at 18.

5        Lui presents evidence indicating that some of these individuals may have initiated

6    or encouraged the investigation into her conduct. Specifically, Lui states in her

7    declaration that an employee, Jackie Laraby, filed a "demonstrably false" grievance

8    claiming that Lui acted in a violent manner by throwing a clipboard and kicking

9    packages. Dkt. 27, ¶¶ 7–8. Additionally, Charles Roberts, who was Lui's direct

10   supervisor when she was the postmaster in Shelton, states in his declaration that Stoke

11   and Delgado attempted to pressure Roberts into proposing that Lui's position be

12   downgraded. Dkt. 26, ¶ 15. Roberts ultimately refused to sign the notice of the proposed

13   downgrade because he believed that the complaints against Lui were fabricated and that

14   Stoke and Delgado wanted Lui disciplined because of her race and sex. *Id.* ¶¶ 15, 17.

15   Subsequently, Carter Clark, the manager of post office operations for USPS's Seattle

16   district, signed the notice. *Id.* ¶ 17; Dkt. 23-3 at 13. Thereafter, Bacon investigated the

17   charges enumerated in this notice before rendering her decision on the proposal. *See* Dkt.

18   23-6.

19       Although Lui presents some evidence indicating that Stoke, Delgado, and other

20   employees initiated or encouraged Bacon's investigation into her conduct, Dkt. 26, ¶ 15,

21   she does not present any evidence indicating that these individuals were involved in

22   making the ultimate decision to downgrade her position. When an employee initiates an

1    investigation into the plaintiff's conduct, the discriminatory bias of that employee is not

2    imputable to an independent decisionmaker unless the plaintiff "show[s] a nexus between

3    [that employee]'s discriminatory remarks and [the independent decisionmaker's]

4    subsequent employment decisions." *Vasquez*, 349 F.3d at 640. Lui makes no such

5    showing. Accordingly, she fails to raise a fact issue as to whether Bacon's decision to

6    downgrade her position was improperly influenced by the discriminatory bias of any

7    other employee.

8         Lui also asserts that USPS treated her less fairly than another similarly situated

9    employee, C.B., who was a white female and the postmaster of another post office in

10   Washington. Dkt. 31 at 22. Lui contends that C.B. "was investigated for creating a hostile

11   [work] environment" and that USPS issued to her only letters of warning in lieu of 14-

12   day suspensions.[4] *Id.* at 22–23.

13        In support of this argument, Lui cites to Roberts' declaration. *Id.* (citing Dkt. 26,

14   ¶ 20). Roberts states that USPS issued to C.B. a letter of warning in lieu of a 14-day

15   suspension on two separate occasions. Dkt. 26, ¶ 20; *see also* Dkt. 30-2 at 5–6. On the

16   first occasion, Roberts issued a warning in December 2019 because "[his] management

17   felt that [C.B.] was subjecting staff . . . to a hostile work environment. The accusations

18

19

20

---

21        [4] Lui actually states that USPS issued to C.B. "Proposed 14-day suspension[s]." *Id.* at 22–23. However, it appears from the record that USPS sent C.B. letters of warning in lieu of 14-day suspensions. *See* Dkt. 30-2 at 5–6.

22

1    levied against [C.B.] included [C.B.] using curse words frequently towards staff."[5]  Dkt.

2    26, ¶ 20.

3         On the second occasion, USPS issued to C.B. another warning in April 2020 "for

4    workplace safety issues." *Id.* The April 2020 letter specifies that C.B. "Fail[ed] to Work

5    in a Safe Manner" when she requested another employee assist her in dragging a "carrier

6    case" that had an electrical cord that was still attached to another case. Dkt. 30-2 at 5. The

7    other case fell and hit C.B., causing her to fall to the ground and "pinning [her] to the

8    ground by [her] ankle." *Id.*

9         Because the reported conduct that served as the basis for C.B.'s letters of warning

10   were not similar to the reported conduct that served as the basis for Lui's downgrade, Lui

11   fails to raise a fact issue as to whether she was similarly situated to C.B. Indeed, C.B.'s

12   reported act of "using curse words frequently towards staff," Dkt. 26, ¶ 20, is not similar

13   to Lui's reported acts of both instructing an employee to accept a compensation scheme

14   for working on non-scheduled workdays that was inconsistent with his union-bargained

15   employment agreement and acting in a violent manner by throwing a clipboard and

16   kicking packages and boxes. *See* Dkt. 23-6. Nor is C.B.'s reported act of unsafely moving

17   a carrier case similar to either of these reported acts.

18

19

20        [5] The December 2019 letter of warning does not appear in the record. Instead, Lui filed
     copies of notes from an investigation that was conducted before Roberts issued the December
21   2019 letter. *See* Dkt. 30-1. Because the December 2019 letter is not in the record, the Court
     cannot determine what allegations from the investigation ultimately served as the basis for
22   Roberts' decision to issue the warning in December 2019.

1    For these reasons, Lui fails to raise a genuine issue of material fact concerning a

2    prima facie case of disparate treatment. Even if Lui could make this showing—which she

3    does not—she fails to raise a fact issue as to whether USPS's legitimate,

4    nondiscriminatory reasons for downgrading her position are pretextual. Bacon's decision

5    to downgrade Lui's position provides two legitimate, nondiscriminatory reasons for the

6    downgrade: (1) instructing an employee to accept a compensation scheme for working on

7    non-scheduled workdays that was inconsistent with his union-bargained employment

8    agreement; and (2) behaving in a seemingly violent manner by throwing a clipboard and

9    kicking packages and boxes. *See* Dkt. 23-6. Lui does not adduce any evidence indicating

10   that a discriminatory reason motivated Bacon's decision or that Bacon's reasons are

11   unworthy of credence. *See Chuang*, 225 F.3d at 1124.

12        Accordingly, the Court DECLINES TO ADOPT the R&R's recommendation that

13   the Court deny USPS's motion for summary judgment on Lui's disparate treatment

14   claim. USPS's objections concerning this recommendation are SUSTAINED, its motion

15   for summary judgment on the disparate treatment claim is GRANTED, and that claim is

16   DISMISSED with prejudice.

17   **E.   USPS's Objections to the R&R Concerning the Hostile Work Environment
      Claim**

18

19        USPS objects to the R&R's conclusion that Lui timely notified an EEO counselor

20   of her hostile work environment claim within 45 days of USPS issuing the proposed

21   decision to downgrade her position. Dkt. 47 at 7–9. USPS contends that the proposed

22   decision to downgrade Lui's position is a discrete act that cannot form the basis of a

1  hostile work environment claim. *Id.* at 8. It argues that, to advance such a claim in this

2  Court, Lui was required—but failed—to notify the EEO counselor within 45 days of a

3  *non-discrete* act occurring. *Id.* at 8–9. USPS also objects to the R&R's conclusion that

4  Lui presents sufficient evidence to support the merits of a hostile work environment

5  claim. *Id.* at 9–12.

6        Lui does not directly address whether she timely notified the EEO counselor of her

7  hostile work environment claim. *See* Dkt. 50 at 4–6. However, she asserts that the notice

8  of the proposed downgrade "was the last act in a series of non-discrete acts" that is

9  sufficient to support a hostile work environment claim. *Id.* at 4. Lui also contends that she

10  adduces sufficient evidence to support her hostile work environment claim. *Id.* at 4–6.

11        "In order to bring a Title VII claim in district court, a plaintiff must first exhaust

12  her administrative remedies." *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir.

13  2001). "Under the Title VII statutory and regulatory scheme, a federal employee must

14  notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct,

15  and then, if the matter is not resolved, the employee may submit a formal administrative

16  complaint." *Id.* at 708. "[F]ailure to comply with this regulation has been held to be fatal

17  to a federal employee's discrimination claim." *Lyons v. England*, 307 F.3d 1092, 1105

18  (9th Cir. 2002).

19        "In determining whether a [Title VII] claim is timely, there is a distinction

20  between discrete acts of discrimination and/or retaliation, versus hostile work

21  environment claims." *Yonemoto v. Shinseki*, 3 F. Supp. 3d 827, 842 (D. Haw. 2014). "A

22  discrete act consists of an unlawful practice that 'occurred' on the day it 'happened,'

1   which includes, for example, 'termination, failure to promote, denial of transfer, or

2   refusal to hire.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111

3   (2002)). "Discrete acts . . . may be actionable on their own." *Beckmann v. Ito*, 430 F.

4   Supp. 3d 655, 674 (D. Haw. 2020).

5          By contrast, "hostile work environment claims are 'different in kind from discrete

6   acts,' because they 'are based on the cumulative effect of individual acts,' 'occur[] over a

7   series of days or perhaps years and, in direct contrast to discrete acts, a single act of

8   harassment may not be actionable on its own.'" *Yonemoto*, 3 F. Supp. 3d at 842 (quoting

9   *Morgan*, 536 U.S. at 111). Specifically, hostile work environment claims require a

10  showing that: (1) the plaintiff was subjected to verbal or physical conduct based on the

11  plaintiff's membership in a protected class; (2) the conduct was unwelcome; and (3) the

12  conduct was sufficiently severe or pervasive to alter the conditions of employment and

13  create an abusive work environment. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647

14  (9th Cir. 2021).

15         Because hostile work environment claims are based on the cumulative effect of

16  individual acts, "'the entire time period of the hostile environment may be considered by

17  a court for the purposes of determining liability' so long as at least one 'act contributing

18  to the claim occurs within the filing period.'" *Scott v. Gino Morena Enters., LLC*, 888

19  F.3d 1101, 1112 (9th Cir. 2018) (quoting *Morgan*, 536 U.S. at 117).

20         But a plaintiff cannot rely on a timely-filed *discrete* act to rekindle an untimely

21  hostile work environment claim. Indeed, courts "refuse to mix recent discrete acts like

22  tinder with the planks of ancient [non-discrete acts] and then, regardless of whatever it

1    was that set the spark in the furnace, call the fire that ignites therefrom a hostile

2    environment." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005). "If the

3    flames of an allegedly hostile environment are to rise to the level of an actionable claim,

4    they must do so based on the fuel of timely non-discrete acts." *Id.*

5         The R&R concludes that Lui timely notified an EEO counselor of her hostile work

6    environment claim within 45 days of receiving the notice of the proposed decision to

7    downgrade her position. Dkt. 46 at 20. However, this proposed decision is a discrete act.

8    Indeed, because of this proposed decision, USPS transferred Lui to the post office in Roy,

9    Washington, pending Bacon's ultimate decision on whether Lui's position should be

10   downgraded. Dkt. 27, ¶ 27. Lui states in her declaration that this transfer increased her

11   commute time from her home in Olympia, Washington, and that the Roy post office was

12   smaller than the Shelton post office. *Id.* Under these circumstances, the proposed decision

13   to downgrade Lui's position is a discrete adverse employment action. *See Vasquez*, 349

14   F.3d at 646–47 (recognizing that a transfer may be an adverse employment action for

15   purposes of a disparate treatment claim); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th

16   Cir. 2000) (recognizing that a transfer may be an adverse employment action for purposes

17   of a retaliation claim).

18        Although the proposal to downgrade Lui's position and her concurrent transfer to

19   the Roy post office pending Bacon's decision may have been a discrete adverse

20   employment action, Lui does not argue this theory in support of either her retaliation

21   claim or her disparate treatment claim. However, even if she did, these claims would not

22   survive summary judgment. Lui fails to establish that she engaged in a protected activity

1    concerning any of the three grounds that served as a basis for the proposed downgrade.

2    Finally, and fatally, she also fails to present any evidence indicating that Clark's decision

3    to issue the proposed downgrade was improperly influenced by discriminatory bias.

4    But more to the point, the proposed decision to downgrade Lui's position does not

5    form the basis of Lui's hostile work environment claim. Indeed, Lui does not present any

6    evidence indicating that Clark subjected Lui to unwelcome verbal or physical conduct

7    based on her membership in a protected class when he either issued or enforced this

8    proposed decision. *See Fried*, 18 F.4th at 647.

9    For these reasons, the proposed decision to downgrade Lui's position is a discrete

10   adverse employment action that the Court declines to consider when determining whether

11   Lui timely notified the EEO counselor of her hostile work environment claim. *See Porter*,

12   419 F.3d at 893.

13   Lui also does not adduce any evidence indicating that she timely notified the EEO

14   counselor within 45 days of any act forming the basis of her hostile work environment

15   claim. *See* Dkt. 31 at 23–26; Dkt. 50 at 4–7. Therefore, Lui failed to exhaust her

16   administrative remedies concerning the hostile work environment claim and she cannot

17   advance this claim in this Court.[6] *See Lyons*, 307 F.3d at 1105.

18   Accordingly, the Court DECLINES TO ADOPT the R&R's recommendation that

19   the Court deny USPS's motion for summary judgment on Lui's hostile work environment

20   claim. USPS's objection concerning this recommendation is SUSTAINED, its motion for

21

22   [6] Because the hostile work environment claim is procedurally barred, the Court does not address whether Lui presents sufficient evidence to support the merits of this claim.

1  summary judgment on the hostile work environment claim is GRANTED, and that claim

2  is DISMISSED with prejudice.

3  **F.    USPS's Objections to the R&R Concerning the ADEA Claim**

4          USPS objects to the R&R insofar as it fails to recommend that the Court dismiss

5  Lui's ADEA claims. Dkt. 47 at 12. USPS also objects to the R&R's recommendation that

6  the Court decline to "dismiss plaintiff's prayer for relief requesting compensatory

7  damages for emotional pain and suffering" under the ADEA. Dkt. 46 at 25; *see* Dkt. 47 at

8  12. Lui does not address these objections. *See* Dkt. 50.

9          Lui's ADEA claims fail for the same reasons that her Title VII claims fail.

10  Furthermore, as USPS asserts, Lui conceded during her deposition that she was not

11  discriminated against because of her age:

12          Q.    And are you claiming that that discrimination -- well, what
          are you claiming that discrimination was based on, in terms of are you
13          saying it was based on your -- your sex, your race, your national origin, and
          your age?
14
15          A.    My age probably didn't matter to them. A lot of people think
          that I'm younger than my age when I was in Shelton. That's what they told
16          me. Okay . . . . Age was not the thing. But I'm Asian, I'm a manager. That
          bothers a lot of them.

17  Dkt. 23-2 at 5–6.

18          Accordingly, USPS's motion for summary judgment on the ADEA claims is

19  GRANTED and those claims are DISMISSED with prejudice.[7]

20

21  _____

22          [7] Because there is no merit to the ADEA claims, the Court does not consider whether Lui
          improperly seeks compensatory damages under the ADEA.

1

### III.  ORDER

2      The Court, having considered the R&R, the parties' objections, and the remaining

3  record, does hereby order as follows:

4      (1)     The R&R is **ADOPTED in part and DECLINED in part**;

5      (2)     Lui's objections to the R&R, Dkts. 48, 49-1, are **OVERRULED**;

6      (3)     USPS's objections to the R&R, Dkt. 47, are **SUSTAINED**;

7      (4)     USPS's motion for summary judgment, Dkt. 22, is **GRANTED**;

8      (5)     Lui's retaliation, disparate treatment, hostile work environment, and ADEA

9             claims are **DISMISSED with prejudice**.

10     The Clerk shall enter a JUDGMENT and close the case.

11     Dated this 5th day of May, 2023.

12

13

                                    _____
14                                   BENJAMIN H. SETTLE
                                    United States District Judge
15

16

17

18

19

20

21

22